UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Ray Gene Wilson, | ) | Civil Action No.  5:13-cv-01621-JMC-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). The two issues before the court are whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner's decision applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.    Relevant Background

A.    Procedural History

Plaintiff filed a DIB application on June 22, 2007, alleging a disability onset date of November 3, 2006. Tr. 208. Plaintiff last met the insured status requirements of the Act on December 31, 2011. Tr. 247. His application for DIB was denied initially and upon reconsideration, Tr. 89-92, and Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"), Tr. 127.    Following a hearing, on December 16, 2009, the ALJ issued a decision

finding Plaintiff was not disabled. Tr. 95-104. The Appeals Council granted Plaintiff's request for review on October 21, 2010, and remanded the case back to the ALJ for evaluation of Plaintiff's mental impairments, the vocational counselor's opinion, Plaintiff's obesity, and further consideration of Plaintiff's maximum residual functional capacity ("RFC"). Tr. 110-12. The ALJ held a second hearing on December 13, 2011, Tr. 37-61, and issued a second decision finding Plaintiff was not disabled, Tr. 12-36. The Appeals Council denied Plaintiff's request for review on April 10, 2013, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. Tr. 1-5. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on June 13, 2013. ECF No. 1.

B.     Plaintiff's Background

Plaintiff was born on June 21, 1960, completed high school, and has past relevant work ("PRW") as construction laborer and foreman building commercial buildings. Tr. 242, 245, 247. Plaintiff alleges he is unable to work due to back surgery, back pain, high blood pressure, gout, and high cholesterol, and he is unable to bend or lift. Tr. 241.

1.   The Administrative Hearing

a.   Plaintiff's 2009 Hearing Testimony

Plaintiff and his counsel appeared at his first administrative hearing before ALJ Edward T. Morriss on November 19, 2009. Tr. 62-88. Plaintiff stated that he was 49 years old and had graduated from high school taking regular classes. Tr. 65-66. Plaintiff testified that in his last year of high school he went to vocational school "and did mechanic for one year." Tr. 66. Plaintiff stated he never worked as a mechanic, did not go to college, and did not serve in the military. *Id.* Plaintiff stated he could read, but could not understand all the words in the newspaper, and he could count and balance his checkbook. Tr. 66-67. Plaintiff testified he worked as a press operator after high school, and his other work experience was in industrial

construction. Tr. 67. Plaintiff stated that on April 1, 2005 he was working and fell about five feet down a flight of steps. Tr. 68. Plaintiff stated he was seen by many doctors including Dr. Edwards, who performed back surgery; Dr. Don Stovall; and Dr. Dean Lorenz for pain management. *Id.* In response to his attorney's questions, Plaintiff indicated that he was taking the following medications: Tramadol 50 mg, morphine, Diclofenac, and Tylenol 500 mg for pain; Cymbalta for sleep and depression; Senokot for constipation; Metapropal, Verapramil, and Benazepril for blood pressure; Pravastatin for cholesterol; Vitamin B12; and Rolaids and Tums for the indigestion caused by the medications. Tr. 68-69. Plaintiff testified that he has back pain that radiates from his lower back and ribcage, down both sides, buttocks, and legs, to his feet. Tr. 70. Plaintiff testified that the pain is constant, but sometimes more intense. *Id.* Plaintiff stated that, on a scale of zero to ten, when his back pain is at its least it rates a six, and it increases to nine. Tr. 70-71. Plaintiff stated his back pain is aggravated by sitting, standing, and walking. Tr. 71. To reduce his pain from a level nine to level six he takes medicine and rests. *Id.* Plaintiff stated the medication causes side effects of depression, blurry vision, itching, short-term memory loss, constipation, tingling in his feet, numbness in his hands and feet, slurred speech, and drowsiness. Tr. 71-72. Plaintiff also testified that Dr. Lorenz had him on Lidoderm patches and was administering injections in his back every two months. Tr. 72-73. Plaintiff stated his back condition was getting worse. Tr. 73. He stated that if he got a job standing at a cash register he would only be able to stand for a few minutes before he would need to first walk and move around, then take medicine, and then he would need to go home. Tr. 76. Plaintiff stated that during the day he stays home, manages his pain, and takes medicine. *Id.* He stated he alternates between the sofa, the bed, and spends the majority of the day in the recliner. *Id.* Plaintiff stated he is unable to sit comfortably through a 30-minute TV program. Tr. 77. Plaintiff stated that in walking down three steps and 200 feet to his mailbox he would have to take a break because of

the pain. *Id.* Plaintiff testified that the heaviest thing he could lift was a gallon of milk. Tr. 77-78.

Plaintiff stated that he cannot reach because of pain and uses a stick "for picking up or reaching

up." Tr. 78. Plaintiff testified that he is able to prepare microwave meals, sandwiches, or other

light meals but is unable to sweep, vacuum, or mop. *Id.* Plaintiff stated he could make the bed,

but not change the linens, and he could clean the bathroom sink or anything at table height, but

could not clean the bathtub. Tr. 79. Plaintiff stated he could fold clothes, or wash a few dishes,

but not a sink full of dishes. *Id.* Plaintiff testified that he drove frequently locally to go to the

pharmacy or the grocery store. *Id.* Plaintiff also testified that he attends church or Sunday school,

but does not stay for the entire service and sits near the door so he can move around or excuse

himself. Tr. 80. Plaintiff stated that he sometimes uses his stick to do yard work by picking up

trash. Tr. 80-81. Plaintiff testified his wife helps him in the shower to wash his back and feet, and

she also helps him to dress. Tr. 81. Plaintiff stated he has difficulty sleeping because of the pain,

and gets depressed and angry because he is unable to work. Tr. 82.

    In response to questions from the ALJ, Plaintiff noted that he had gained about 30 pounds

since his injury, but did not feel his weight had any effect on his ability to work. Tr. 83-84.

Plaintiff stated his March 2006 surgery helped him and he went back to work, but then his

condition worsened. Tr. 84. Plaintiff stated that additional surgery was not being considered

because it would not help. Tr. 85. Plaintiff testified that although he was not prescribed a cane,

he sometimes used one to help with balance and because of weakness in his leg. Tr. 86-87.

### b.  Plaintiff's 2011 Hearing Testimony

    Following remand of the matter by the Appeals Council, on December 13, 2011,

Plaintiff once again appeared, with counsel, before ALJ Morriss. Tr. 37-61. Plaintiff's wife,

Mary Wilson, also appeared as a witness. Tr. 37. Plaintiff testified that he lived in his one-story

home with his wife and three children, two of whom were age three and one age six. Tr. 41.

Plaintiff stated that he last worked in November 2006 for Hightower Construction building concrete forms, carrying rebar, and pouring concrete. Tr. 43. Plaintiff worked at Hightower Construction for six months after his injury. Tr. 44. Prior to his injury he worked at Brantley Construction for three years doing the same type of work. *Id.* He also worked for several other construction companies prior to working at Brantley Construction. Tr. 45. Plaintiff testified that in April 2005 he was injured while working at Brantley Construction when he fell backwards out of a door frame onto his back and hip. Tr. 46. Although he continued to work, eventually he could "bear the pain no longer and the doctor put [him] out." *Id.* Plaintiff had back surgery in 2006, but no other surgeries were performed or have been scheduled. *Id.* Plaintiff testified that he has high blood pressure and gets headaches twice a week. Tr. 47. He testified that his medications cause the side effects of shortness of breath, weakness, blurry vision, and dizziness. Tr. 47-48. Plaintiff stated he has trouble walking and sometimes uses a cane. Tr. 48. He also stated he has trouble hearing, and has pain on a daily basis. Tr. 49. Plaintiff stated the pain is from his "lower back coming across to [his] hip all the way down to the bottom of [his] toe." *Id.* Plaintiff stated the pain is predominately in his left leg, but sometimes he had pain in his right leg. *Id.* Plaintiff testified that the pain was moderate but sometimes is severe enough to make him cry. *Id.* Plaintiff stated that when the pain gets that bad he takes more medicine. *Id.* Plaintiff testified that he elevates his leg in the recliner for three or four hours every day, and lies down twice a day for one to two hours. Tr. 49-50. Plaintiff stated that if he walks more than 200 feet he gets chest pain, but does not know what causes the pain. Tr. 50. Plaintiff stated he has trouble lifting his shoulders, and has numbness and tingling in his left hand. Tr. 51. Plaintiff testified that he can sit comfortably for 30 minutes or less and then he needs to "get up and move around to take the pressure off." Tr. 52. Plaintiff stated he could stand in one spot for five minutes or less, and then he would need to walk around or lean on something. *Id.* Plaintiff stated that when he

tries to bend over, he gets "a lot of pressure in [his] back." Tr. 53. Plaintiff testified he could lift a gallon of milk and carry it about five feet, but any further than that put pressure on his back. *Id.* Plaintiff testified that Dr. Lorenz, who he sees for pain management, also prescribed physical therapy which "helped a little bit." Tr. 54. Plaintiff stated damp and cold weather aggravated his back. *Id.* Plaintiff testified that he has never been treated for depression or anxiety but was taking medication for depression prescribed by Dr. Lorenz. Tr. 55. Plaintiff stated the depression started after he got hurt. *Id.* Plaintiff stated he can prepare a TV dinner and can help fold clothes, but his wife does "pretty much everything now." Tr. 56. Plaintiff stated that his wife helps him in the shower by washing his back. Tr. 57. Plaintiff stated that he does not visit with friends or relatives, but will sometimes visit his deacon in the nursing home. *Id.* Plaintiff stated he has trouble with his memory and concentration that developed after he got hurt. *Id.* Plaintiff stated that he attends church, but not as regularly as he used to attend because of his lower-back pain. Tr. 57-58. Plaintiff stated he is unable to do things with his children because of the pain. Tr. 58.

### c. Witness Testimony at 2011 Hearing

Plaintiff's wife testified that everything stated by her husband was truthful. Tr. 59. She stated that since Plaintiff was injured he is withdrawn. *Id.* She stated that before he was injured he enjoyed working. *Id.*

## II. Discussion

### A. The ALJ's Findings

In his January 27, 2012, decision, the ALJ made the following findings of fact and conclusions of law:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2011.

2.      The claimant did not engage in substantial gainful activity during the period from his alleged onset date of November 3, 2006 through his date last insured of December 31, 2011 (20 CFR 404.1571 *et seq.*).

3.      Through the date last insured, the claimant had the following severe impairments: obesity, fall injury in April 2005, and status-post discectomy in March 2006 (20 CFR 404.1520(c)).

4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that his pain would limit him to simple, routine, repetitive tasks.

6.      Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on June 28, 1960 and was 51 years old, which is defined as a younger individual age 18-49, on the date last insured. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules support a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant was not under a disability, as defined in the Social Security Act, at any time from November 3, 2006, the alleged onset date, through December 31, 2011, the date last insured (20 CFR 404.1520(g)).

Tr. 17-29.

B.     Legal Framework

1.  The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are

---

[1]The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria."  20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. at 146 (noting the burden is on claimant to establish his impairment is disabling at Step 3).

sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing an inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

2.      The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S.

389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek v. Finch*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

### C. Analysis

Plaintiff argues that the ALJ erred in the following ways: (1) in failing to give controlling weight to Plaintiff's treating physicians; (2) in finding Plaintiff did not meet a listing; (3) in not obtaining a Vocational Expert ("VE") and ignoring the report of Plaintiff's VE; (4) in failing to properly consider Plaintiff's psychological limitations in making his RFC determination and in finding Plaintiff had the RFC to perform light work. The Commissioner counters that the ALJ's decision is supported by substantial evidence and should be upheld.

### 1. Treating Physicians

Plaintiff asserts the "ALJ gave limited or little weight to almost all of [Plaintiff's] treating doctors, with the exception of the first doctor [he] saw," Dr. W. S. Edwards. Pl.'s Br. 3, ECF No.

10

16. Plaintiff cites to the opinions of Dr. W. Dean Lorenz, Dr. Don O. Stovall, Jr., and Dr. George Bitting. The Commissioner asserts that substantial evidence supports the ALJ's decision to give great weight to the opinion of Dr. Edwards and little weight to the opinions of Drs. Lorenz and Bitting.[2] Def.'s Br. 22-24, ECF No. 17.

In his RFC analysis the ALJ described Plaintiff's treatment history with his doctors. Tr. 22-23. The ALJ gave great weight to the August 2007 opinion of Plaintiff's treating orthopedist Dr. Edwards that "indicated that there had been no worsening of the claimant's condition and that surgery was successful. His opinion is supported by x-rays showing no change from previous films." Tr. 25. The ALJ gave little weight to the February 2006 opinion of Dr. Stovall because it predated Plaintiff's alleged onset date and lumbar surgery and therefore it might not have been "an accurate estimate of the claimant's weightlifting capacity after the onset date" and was "not a reliable assessment based on the change in the claimant's condition following surgery." *Id.* The ALJ gave limited weight to Dr. Lorenz's April 2009 deposition opinion that agreed with the restriction that Plaintiff could lift 35 pounds occasionally and 25 pounds frequently from waist to shoulder, and limited Plaintiff to no floor-to-waist lifting. Tr. 25-26. The ALJ determined that Dr. Lorenz's treatment notes indicated "improvement in spinal range of motion and show good range of motion with treatment" and that Dr. Lorenz had not specifically tested Plaintiff's ability to lift from floor to waist level. Tr. 26. The ALJ gave little weight to the opinions of Dr. Bitting finding his conclusions were "not supported by treatment records or the record as a whole." *Id.*

Plaintiff argues that the ALJ rejection of his treating physicians' opinions was in error because:

---

[2] The Commissioner does not address Plaintiff's argument regarding the opinion of Dr. Stovall.

- The ALJ did not give proper credit and weight to the records of Dr. Lorenz and instead erroneously relied primarily on the records of Dr. Edwards;

- The ALJ failed to consider relevant portions of Dr. Stovall's records which indicated a worsening in Plaintiff's condition that would require on-going pain management; and

- Dr. Bitting's opinion was entitled to more weight because he "was brought in to perform an Independent Medical Examination and did a thorough review and examination."

Pl.'s Br. 5-6.

Courts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant; (2) the treatment relationship between the physician and the applicant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist. *Johnson*, 434 F.3d at 654; 20 C.F.R. § 404.1527(c). After reviewing the medical evidence of record, the undersigned concludes that the ALJ appropriately considered the opinions of Drs. Lorenz, Stovall, and Bitting. The ALJ discussed the opinions and explained why he was discounting them when evaluating Plaintiff's RFC and substantially applied the required factors when evaluating the opinions. Tr. 25-26.  For instance, the ALJ reviewed the length of the treating relationship, the frequency of examinations, and the nature and extent of the treating relationship. Tr. 22-25. Moreover, the ALJ discussed the medical evidence, or lack thereof, in support of the opinion. Tr. 25-26. As the ALJ articulated sufficient reasons for assigning less weight to the opinions of Plaintiff's treating physicians, Drs. Lorenz, Stovall, and Bitting, the undersigned recommends that this challenge to the ALJ decision be dismissed. Furthermore, even if the evidence Plaintiff highlights could support a different result, the court's role is not to second-guess the ALJ's findings. *See Johnson*, 434 F.3d at 653 (finding that under the substantial evidence standard, the

12

court does not reweigh conflicts in the evidence or substitute its judgment for that of the ALJ). Accordingly, the undersigned recommends that the determination in this regard be affirmed.

### 2.   Medical Listings

Plaintiff contends that the evidence supports that he met Listing 12.04 Affective Disorders, Listing 1.04 Disorders of the Spine, and possibly Listing 12.05 Intellectual Disability. Pl.'s Br. 8-9. The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any listed impairment. Def.'s Br. 17.

### a.   Listing 12.04

Plaintiff asserts that, based on the findings of Dr. James J. Mady,[3] Plaintiff met the required criteria for Listing 12.04. The Commissioner contends there "is absolutely no evidence in the record of medically documented persistence of depression" to the degree set forth in the regulations, no "longitudinal evidence of Plaintiff's mental functioning at all[,]" and "Dr. Mady's opinion, after one examination, that Plaintiff met this listing is insufficient to overcome the need for such evidence." Def.'s Br. 19.

Listing 12.04 contains A, B, and C criteria.  *See* 20 C.F.R. 404, subpt. P, app. 1, § 12.04. To meet Listing 12.04, the claimant must satisfy either "paragraph A" and "paragraph B;" or "paragraph C" alone. *Id.*  On October 15, 2009, Dr. Mady completed an opinion form for Listing 12.04 finding that Plaintiff met both the A and B criteria. Tr. 550-51. Dr. Mady opined that under the A criteria, Plaintiff had medically documented persistence, either continuous or intermittent, of Major Depressive Disorder characterized by anhedonia or pervasive loss of interest in almost all activities, appetite disturbance with change in weight, sleep disturbance, psychomotor

---

[3] Dr. Mady, a licensed clinical psychologist, completed a Psychological and Behavioral Medicine Consultation and Evaluation of Plaintiff. Tr. 533-53.

agitation or retardation, decreased energy, feelings of worthlessness or guilt, and difficulty in thinking or concentrating. *Id.* Based on these findings, Dr. Mady opined Plaintiff satisfied the B criteria because he had the following restrictions and difficulties: marked restriction of activities of daily living; marked difficulty in maintaining social functioning; and marked difficulty in maintaining concentration, persistence, or pace. *Id.*

The ALJ considered the opinion of Dr. Mady and noted that Plaintiff had not previously complained of such extreme symptoms to his treating physicians, had not sought any mental health treatment prior to his evaluation by Dr. Mady, and, following his evaluation, Plaintiff continued without any mental health treatment. Tr. 19. The ALJ further noted that when Plaintiff was referred for a psychological consultation in December 2009, his depression inventory score showed moderate depression and Plaintiff was not diagnosed with anxiety. *Id.* In his analysis the ALJ focused on the paragraph B requirements. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following four criteria: (1) marked[4] restriction of activities of daily living;[5] (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.[6] 20 C.F.R. Part 404, subpt. P, app. 1, § 12.04.

Here, the ALJ found that Plaintiff had mild limitations in ADLs noting Plaintiff's testimony regarding his "ability to do some light household chores, drive, shop, assist his wife with housework, and prepare simple meals." Tr. 19. The ALJ found Plaintiff had mild limitation

---

[4] A marked limitation means more than moderate but less than extreme. 20 C.F.R. 404, subpt. P, app. 1.

[5] Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office. 20 C.F.R. 404, subpt. P, app.1.

[6] Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every four months, each lasting for at least two weeks. 20 C.F.R. 404, subpt. P, app. 1.

in the area of social functioning based on Plaintiff's testimony that "he attends church regularly and is able to go shopping." *Id.* The ALJ determined that in the functional area of concentration, persistence or pace Plaintiff had mild limitation that was "a result of his pain rather than a mental impairment." *Id.* The ALJ noted Plaintiff had no episodes of decompensation of extended duration. *Id.*

It is, generally, the responsibility of the ALJ to decide the legal question of whether a listing is met by a claimant's impairments. *See* SSR 96-6p. After reviewing the record before the court, the undersigned finds that the ALJ followed the appropriate procedure for explaining his listing determination. He set forth the criteria for meeting the listings, compared the listing criteria with Plaintiff's symptoms, and explicitly stated his reasons for finding that Plaintiff's mental impairments did not meet a listed impairment. *See Cook v. Heckler*, 783 F.2d at 1173. The undersigned also finds that the ALJ discussed Dr. Mady's opinion and found that Dr. Mady's findings were inconsistent with the treatment record. *See* Tr. 19.

b.    Listing 1.04

Plaintiff contends the ALJ did not acknowledge, in his assessment at Step Two, the listing form provided by Dr. Bitting opining that Plaintiff met Listing 1.04. Pl.'s Br. 8-9. Furthermore, Plaintiff asserts the ALJ did not consider Plaintiff's subjective complaints of pain. *Id.* at 9. The Commissioner asserts that the ALJ did not ignore the opinion of Dr. Bitting, but found that it was inconsistent with the weight of the medical evidence, and therefore, substantial evidence supports the ALJ's finding that Plaintiff's back impairment did not meet Listing 1.04. Def.'s Br. 18. The Commissioner contends that Plaintiff's argument concerning his subjective complaints of pain "is irrelevant to whether Plaintiff met Listing 1.04, or any listing, because it was Plaintiff's burden to prove by *medical evidence* that his impairment met or medically equaled the relevant listing. *Id.* (emphasis in Def.'s Brief).

15

Listing 1.00 covers the musculoskeletal system, and Listing 1.04 encompasses:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. *With*:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
*or*
B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
*or*
C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 CFR Pt. 404, Subpt. P, App. 1, § 1.04 (emphasis added).

In his June 2009 opinion, Dr. Bitting determined Plaintiff met Listing 1.04 because he had a vetebrogenic disorder of herniated nucleus pulposas resulting in compromise of a nerve root or spinal cord. Tr. 554. Dr. Bitting indicated the clinical/lab evidence for his diagnosis was "chronic pain/sensory deficits." *Id.* Dr. Bitting opined Plaintiff had evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of range of motion in the spine, motor loss accompanied by sensory and reflex loss, and positive straight leg raising test. *Id.*

At Step Three of his analysis the ALJ found that Plaintiff's back impairment did not meet Listing 1.04 "because there is no evidence that it is characterized by nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication." Tr. 20. In his RFC analysis, the ALJ gave little weight to Dr. Bitting's opinion because Plaintiff's MRIs

showed no herniation, and Dr. Stovall explained that Plaintiff's herniated disc was removed in his surgery. Tr. 26. The ALJ further noted:

> Dr. Bitting indicated nerve root compromise, while the most recent MRI showed only mild pressure on the L5 nerve root. Dr. Bitting noted limited range of motion, motor loss (atrophy and muscle weakness), and positive straight leg raising. However, the claimant's range of motion improved with treatment. There is no evidence of motor loss, muscle atrophy, and muscle weakness in treatment records. Additionally, the claimant's straight leg raising was negative after treatment. As a whole, this opinion is inconsistent with the weight of the medical evidence of record.

*Id.*

The Fourth Circuit has held that an ALJ does not necessarily need to present evidence under a particular step, as long as it is possible, from reading the ALJ's decision, to determine whether there is substantial evidence to support the ALJ's conclusion. *See McCarty v. Apfel*, 28 F. App'x 277, 279-80 (4th Cir. 2002) (finding that "the ALJ need only review medical evidence once in his decision" and therefore, the ALJ's thorough analysis of the medical evidence at step four was sufficient to determine whether claimant satisfied step three).[7]

The undersigned finds that the ALJ considered Dr. Bitting's listing form and the ALJ's discussion of the medical evidence throughout his decision provided enough information to determine there was substantial evidence to support his finding that Plaintiff did not meet Listing 1.04. *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 522 (D. Md. 2002) (finding that remand is not

---

[7] *See also Kiernan v. Astrue*, No. 12-cv-459, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) ("Where the ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion in his Step 3 analysis."); *Stevenson v. Astrue*, No. 10-cv-01565, 2011 WL 4501914, at *4 (D.S.C. Sept. 28, 2011) (finding it was not reversible error where the ALJ sufficiently addressed whether the claimant satisfied step three in his analysis of the evidence "in the latter portion of his decision"); *Buchanan v. Astrue*, No. 10-cv-167, 2011 WL 5439087, at *5 (E.D.N.C. Aug. 15, 2011) ("[A]n ALJ's step-three finding will be upheld, even where she fails to explicitly address why specific listings were not met, where she has discussed in detail the evidence presented and adequately explained her consideration thereof."); *Jones v. Astrue*, No. 07-cv-452, 2009 WL455414, at *3 (E.D.N.C. Aug. 7, 2009) (finding that "it is not necessarily reversible error" where the ALJ does not include "his substantive discussion of the evidence" at steps two and three, but rather, at a later step).

necessary "where it is clear from the record which listing or listings in the [Listing of Impairments] were considered, and there is elsewhere in the ALJ's opinion an equivalent discussion of the medical evidence relevant to the Step Three analysis which allows this Court to readily determine whether there was substantial evidence to support the ALJ's Step Three conclusion"). The undersigned therefore recommends that the determination in this regard be affirmed.

### c.    Listing 12.05

Plaintiff asserts an argument can be made that he "meets a listing under 12.05(c) or (d) considering that he had a standard score of 66 on the reading WTAR[8] test by Dr. Windsorova,[9] though he did have a full scale IQ of 76." Pl.'s Br. 9. Plaintiff contends the "ALJ could have ordered a further psychological CE to gain further testing to see a more defined IQ score." *Id.* at 10. The Commissioner argues that Plaintiff's reading test score is irrelevant to the determination of whether he meets Listing 12.05, and the ALJ did not err in failing to order a consultative examination as it was Plaintiff's burden "to satisfy Listing 12.05 by providing valid IQ scores within the required range." Def.'s Br. 20-21.

The introduction to Section 12.00 of the Listings clarifies how the structure for 12.05 differs from other mental disorder listings: "Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A). Listing 12.05 refers to intellectual disability and states:

---

[8] Wechsler Test of Adult Reading.
[9] Dr. Dora Windsorova, a licensed clinical psychologist, completed a Psychological Consultation of Plaintiff on December 14, 2009, evaluating him for depression.

12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

Or

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
   1. Marked restriction of activities of daily living; or
   2. Marked difficulties in maintaining social functioning; or
   3. Marked difficulties in maintaining concentration, persistence, or pace; or
   4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

In *Hancock v. Astrue*, the Fourth Circuit held that the first prong of Listing 12.05 analysis "requires a showing of 'deficits in adaptive functioning initially manifested during the developmental period.'" *Hancock*, 667 F.3d 470, 473 (4th Cir. 2012). The second prong "requires the satisfaction of one of four additional requirements." *Id.*

Here, the ALJ found that Plaintiff's medically determinable impairment of borderline intellectual functioning did not cause more than minimal limitation in his ability to perform basic work activities. The ALJ noted:

At a December 2009 psychological evaluation, Dr. Windsorova diagnosed borderline intellectual functioning. The claimant achieved a full-scale IQ score of 76, which falls in the borderline range. While this indicates intellectual deficits, the record as a whole does not indicate that the claimant was more than minimally limited by his intellectual deficits . . . . The claimant's work history is inconsistent with significant intellectual limitations. Additionally, he was able to complete high school.

Tr. 18 (internal citations to record omitted).

"Generally, the results obtained by a licensed psychologist following the administration of accepted intelligence tests are entitled to considerable weight in Social Security cases although they are not required to be accepted." *Maybank v. Astrue*, No.4:08–0643–MBS, 2009 WL 2855461, at *11 (D.S.C. Aug. 31, 2009) (citing *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir.1998); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir.1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.1988); *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir.1986)).

As argued by the Commissioner, there is no record evidence demonstrating that Plaintiff met the diagnostic criteria of intellectual disability and as Plaintiff admits, his full scale IQ score of 76 was "outside the bounds of the score range required to meet either Listing 12.05(C) or (D)." Def.'s Br. 20. Moreover, the record does not show significant deficits in Plaintiff's adaptive functioning. His school reports reveal that he graduated from high school in regular classes. Tr. 318-19. He admitted that he could read, write, and balance his checkbook. Tr. 41, 66-67. Plaintiff's reported work history shows that prior to his injury he was able to engage in substantial gainful activity for several years doing construction work, and also worked as a foreman. Tr. 242. Based upon the foregoing, Plaintiff has failed to show that the ALJ committed reversible error by failing to find that his impairments met or were equivalent to Listing 12.05.

### 3.     Use of Vocational Expert

Plaintiff alleges that because of his nonexertional impairments, the ALJ should not have relied on the Grids, but should have obtained the testimony of a VE. Pl.'s Br. 10. Furthermore, Plaintiff asserts that the ALJ erred in discounting the opinion of Plaintiff's VE. *Id.* The Commissioner contends substantial evidence supports the ALJ's findings because the ALJ's reliance on the Grids was proper and the ALJ explained why he discounted the opinion of Plaintiff's VE. Def.'s Br. 25-26.

An ALJ may determine that sufficient jobs exist by relying on the testimony of a VE or by relying on the Medical Vocational Guidelines. The Medical Vocational Guidelines, also referred to as "the Grids," are guidelines, located at 20 C.F.R. Part 404, Subpart P, appendix 2. *See Heckler v. Campbell*, 461 U.S. at 461. The Grids consist of three "Tables," each representing a different RFC, including sedentary (Table 1), light (Table 2), and medium work (Table 3). *Id.* Each table then accounts for other vocational factors, including age, education, and previous work experience. For each combination of factors, the Grids provide whether the claimant is "Disabled" or "Not disabled." *Id.*  "[A]n ALJ is not always required to consider testimony of a VE in order to find a claimant 'not disabled' when the claimant has both exertional and nonexertional limitations. If a plaintiff's nonexertional limitations have a minimal effect on his exertional occupational base, then a finding directed by the Grids is sufficient, and testimony by a VE is unnecessary." *Boland v. Astrue*, No. 3:08CV798-HEH, 2009 WL 2431536, at *7 (E.D. Va. Aug. 7, 2009) (internal citations omitted).  Nonexertional limitations may include difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentration; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing; difficulty tolerating some physical features of certain work settings; or difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. 20 CFR § 404.1569a(c).  As noted by Plaintiff, "[t]he proper inquiry is whether there is substantial evidence to support the finding that the nonexertional condition affects an individual's residual capacity to perform work of which he is exertionally capable." Pl.'s Br. 11 (citing *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989); *Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir. 1984); *Goodwine v. Astrue*, C/A No. 3:08-3829-JFA-JRM, 2010 WL 412606 (D.S.C. Jan. 28, 2010)).

At the request of Plaintiff's attorney, rehabilitation consultant J. Adger Brown, Jr., completed a vocational evaluation of Plaintiff on August 28, 2009. Tr. 289-95. Mr. Brown concluded that Plaintiff was "permanently and totally disabled from any and all forms of employment." Tr. 295. After reading the deposition transcripts of Dr. Lorenz and Dr. Stovall, Mr. Brown issued an addendum to his initial report in September 2009 confirming his prior opinion of Plaintiff's disability. Tr. 296-97. The ALJ considered Mr. Brown's opinion and found:

> While I agree that the claimant's pain would cause limitations in concentration, Mr. Brown did not adequately consider the claimant's ability to perform unskilled work only with simple, routine, repetitive tasks to account for his pain and resulting difficulty concentrating. Overall, Mr. Brown's opinion is inconsistent with the record as a whole, which shows some degree of pain control.

Tr. 28.

The ALJ determined that Plaintiff had the RFC "to perform light work as defined in 20 CFR 404.1567(b) except that his pain would limit him to simple, routine, repetitive tasks." Tr. 20. In making his finding regarding the existence of jobs Plaintiff could perform, the ALJ noted that the additional limitations had "little or no effect on the occupational base of unskilled light work," and a finding of "not disabled" under Medical Vocational Rules 202.21 and 202.14 was appropriate. Tr. 29. The ALJ further noted that the "limitation to simple, routine, repetitive tasks would not significantly erode the unskilled occupational base." *Id.* The ALJ also considered Mr. Brown's addendum opinion and found it was "entitled to little weight based on its reliance on unreliable sources and failure to give adequate consideration to Dr. Lorenz's treatment notes." *Id.*

The ALJ's decision to rely on the Grids and not obtain testimony from a VE is supported by substantial evidence. The ALJ found that Plaintiff suffered from the non-severe nonexertional impairment of borderline intellectual functioning and depression and anxiety. Tr. 18. The ALJ

specifically noted these impairments did not cause more than minimal limitation in Plaintiff's ability to perform basic work activities. *Id.* Plaintiff cites to no evidence to support the finding of a nonexertional condition affecting his ability to work other than noting that he "testified to mental impairments, manipulative limitations, and more." Pl.'s Br. 11. The Commissioner contends that the ALJ's decision to rely on the Grids is supported by his finding that Plaintiff was restricted to simple, routine, and repetitive tasks. Def.'s Br. 26. The undersigned finds that the ALJ did not err by using the Grids to determine whether Plaintiff was disabled.

4.     RFC Assessment

Plaintiff's final allegations of error are that the ALJ failed to properly consider Plaintiff's psychological and functional limitations in determining Plaintiff's RFC. Pl.'s Br. 12-17. The Commissioner asserts substantial evidence supports the ALJ's RFC assessment.

Plaintiff asserts that the ALJ failed to consider the reports of Drs. Mady, Lorenz, and Windsorova which suggest Plaintiff suffers from cognitive impairments which, when combined with physical impairments, would require a finding that Plaintiff "is totally disabled and does not have the ability to engage in any meaningful employment." Pl.'s Br. 16. Plaintiff also argues the ALJ erred in discounting the opinion of Dr. Bitting imposing functional work-related limitations. Pl.'s Br. 16-17. The Commissioner argues that the record supports the finding that "Plaintiff's borderline intellectual functioning, depression, and anxiety were not severe." Def.'s Br. 14. The Commissioner also argues that the ALJ properly gave little weight to Dr. Bitting's opinion because it was unsupported and inconsistent with the medical record. Def.'s Br. 25.

Social Security Ruling 96-8p provides the SSA's policy interpretation regarding assessment of a claimant's RFC at Step Four of the sequential analysis.  In pertinent part, the Ruling provides:

The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.154 and 416.945. . . .

SSR 96-8, 1196 WL 374184, at *1.   Specific to claims of mental impairments, the Ruling provides:

The *psychiatric review technique*. The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

*Id.* at *4 (italics in original).   These additional assessment items at issue expound upon the analysis of the four functional areas to have been considered at Steps Two (determining severe impairments) and Three (determining whether impairments meet or equal a Listed impairment). Listing 12.00 catalogs these additional functions to be considered as to all mental listings. Summarized, the considerations regarding a claimant's activities of daily living include consideration of whether the claimant has "serious difficulty performing [the daily living functions] without direct supervision, or in a suitable manner, or on a consistent, useful, routine basis, or without undue interruptions or distractions."  20 C.F.R. Subpt. P., App. 1, Listing 12.00. The discussion of assessment of "social functioning" is expanded to include the claimant's "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals . . .," as well as his or her "cooperative behaviors, consideration for others, awareness of others' feelings, and social maturity." *Id.* Specifically regarding work settings, the

considerations include assessment of evidence of a claimant's "interactions with the public, responding appropriately to persons in authority (e.g., supervisors), or cooperative behaviors involving coworkers." *Id.* The B criteria of "concentration, persistence, and pace," are further defined as "the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* Listing 12.00 states that this area of functioning "can be discussed in terms of [the claimant's] ability to work at a consistent pace for acceptable periods of time and until a task is completed, and . . . to repeat sequences of action to achieve a goal or an objective." *Id.* Finally, the B criteria of "episodes of decompensation" are expanded to include "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Id.* Such episodes "may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." *Id.*

In assessing Plaintiff's RFC, the ALJ considered the entire record and gave legitimate reasons for his assessment. The ALJ found, through the date last insured, Plaintiff had the RFC to perform light work, except his pain would limit him to simple, routine, repetitive tasks. Tr. 20. In making this determination the ALJ reviewed and analyzed Plaintiff's testimony from both hearings; his medical records, including treatment records from Drs. Lorenz, Edwards, Stovall, Bitting, Mady, Windsorova; and opinions from a medical consultant and vocational consultant. Tr. 20-28. The ALJ performed the analysis required by SSR 96-8p and found that Plaintiff had mild limitation in the first three functional areas, and no episodes of decompensation in the

fourth functional area. Tr. 19.  With regard to Dr. Bitting's functional limitations, the ALJ found

Dr. Bitting's conclusions that Plaintiff would be unable to compete for gainful employment

secondary to his functional limitations were unsupported by treatment records or the record as a

whole. Tr. 26. The ALJ noted that "Dr. Bitting's weightlifting restrictions are consistent with

light work. However, there is inadequate support for his other limitations in the record." *Id.*

(internal citation to record omitted).

The undersigned recommends this challenge to the ALJ's decision be dismissed. The

ALJ's RFC assessment is consistent with the objective medical evidence and other record

evidence. The ALJ has the duty to weigh the evidence, resolve material conflicts in the record,

and decide the case accordingly. *See Richardson v. Perales*, 402 U.S. at 399. The ALJ met his

statutory and regulatory obligation to assess all of the evidence in the record. This court may not

reweigh the evidence or substitute its own judgment for the Commissioner's, even if it finds the

evidence is susceptible to more than one rational interpretation. *See Hays*, 907 F.2d at 1456. For

the foregoing reasons, the undersigned finds that the ALJ properly accounted for Plaintiff's

impairments, and substantial evidence supports the ALJ's conclusion that Plaintiff retained the

RFC to perform light work limited to simple, routine, and repetitive tasks.

### III. Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to

determine whether the ALJ's decision is supported as a matter of fact and law. Based on the

foregoing, the undersigned finds that the Commissioner performed an adequate review of the

whole record, including evidence regarding Plaintiff's mental condition, and that the decision is

supported by substantial evidence.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying,

or reversing the Commissioner's decision with remand in Social Security actions under Section

1631(c)(3) of the Act, 42 U.S.C. Section 405(g), it is recommended that the Commissioner's decision be affirmed.

      IT IS SO RECOMMENDED.

July 9, 2014                                                     Kaymani D. West
Florence, South Carolina                                United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation**